CASE NO. 24-2608
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

MICHELE M. SLEIK, et al.,

              Plaintiffs-Appellants,

    v.

VILLAGE OF HOWARD, et al.,

              Defendants-Appellees.

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

On Appeal from the United States District Court
for the Eastern District of Wisconsin
The Honorable William C. Griesbach, Presiding

By: EMINENT DOMAIN SERVICES, LLC
Attorneys for Plaintiffs-Appellants
Andrew D. Weininger
State Bar Number: 1084096

6515 Grand Teton Plaza, Suite 241
Madison, WI 53719
Tel: 608-535-6109
fax: 608-338-0889

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

Argument ..................................................................................................................... 1

I.  The proposed facts in the Plaintiffs-Appellants' Statement of the
    Case were supported by admissible evidence in the record. .................... 1

II.  The doctrine of constitutional avoidance does not apply. .......................... 3

III.  The Plaintiffs-Appellants established that the special assessments
     were excessive and therefore an unconstitutional taking. ....................... 7

    A.  The general tax cases cited by the Defendants-Appellees
         do not override the specific *Norwood* principle that a
         special assessment in substantial excess of the special
         benefits is an unconstitutional taking. ................................................ 7

    B.  *Norwood* is the applicable and controlling law here and
         the "subsequent Supreme Court cases" cited by the
         Defendants-Appellees do not hold otherwise. .................................. 10

    C.  *Norwood* is the accepted and widely cited law across
         jurisdictions today. .............................................................................. 15

    D.  The assessments in this case were unlawful and
         unreasonable. ...................................................................................... 18

IV.  The Plaintiffs-Appellants' procedural due process rights were
     violated. ..................................................................................................... 22

V.  The Plaintiffs-Appellants' substantive due process rights were
    violated. ...................................................................................................... 23

VI.  The Plaintiffs-Appellants' equal protection rights were violated. .......... 24

Conclusion ................................................................................................................ 26

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7) ...................................... 27

CERTIFICATE OF SERVICE .................................................................................... 28

# TABLE OF AUTHORITIES

## Statutes

28 U.S.C. § 1331 .......................................................................................... 5
28 U.S.C. § 1367 .......................................................................................... 5
Wis. Stat. § 66.0701 ...................................................................... 19, 20, 21
Wis. Stat. § 66.0703 ..................................................................................... 20
Wis. Stat. § 66.0703(12)(d) ......................................................................... 23
Wis. Stat. § 66.60 ......................................................................................... 20

## Cases

*2nd Roc-Jersey Associates v. Town of Morristown,*
    158 N.J. 581, 731 A.2d 1 (1999) ............................................................. 17
*Allison v. Board of County Commissioners of Johnson County, Kansas,*
    241 Kan. 266, 737 P.2d 6 (1987) ........................................................... 17
*Armstrong v. United States,*
    364 U.S. 40 (1960) .................................................................................... 9
*Beard v. Whitley County REMC,*
    840 F.2d 405 (7th Cir. 1988) ................................................................... 2
*Berkvam v. City of Glendale,*
    79 Wis. 2d 279, 255 N.W.2d 521 (1977) ............................................... 20
*Carolina & N.W. Ry. Co. v. Town of Clover,*
    46 F.2d 395 (4th Cir. 1931) ............................................... 6, 16, 18, 24
*Cass Farm Company v. Detroit,*
    181 U.S. 396 (1901) ........................................................................ 13, 16
*CED Properties, LLC v. City of Oshkosh,*
    2018 WI 24, 380 Wis. 2d 399, 909 N.W.2d 136 ............................... 16, 19
*City of Commerce v. Southern Ry. Co.,*
    35 F.2d 331 (5th Cir. 1929) ......................................................... 13, 16, 18
*City of Reno v. Folsom,*
    464 P.2d 454 (Nev. 1970) ....................................................................... 17
*Commonwealth Edison Co. v. United States,*
    271 F.3d 1327 (Fed. Cir. 2001) ................................................................ 8
*Creason v. City of Washington,*
    435 F.3d 820 (8th Cir. 2006) ......................................................... 8, 9, 18
*Detroit v. Parker,*
    181 U.S. 399 (1901) ........................................................................ 13, 14
*Edmonson v. Fremgen,*
    17 F. Supp. 3d 833 (E.D. Wis. 2014) ....................................................... 8
*Estate of Wolff v. Town Bd. of Town of Weston,*
    156 Wis. 2d 588, 457 N.W.2d 510 (Ct. App. 1990) ............................... 22

*Federal Deposit Ins. Corp. v. City of New Iberia,*
  921 F.2d 610 (5th Cir. 1991) ................................................ 18
*French v. Barber Asphalt Paving Company,*
  181 U.S. 324 (1901)........................................ 12, 13, 14, 16
*Furey v. City of Sacramento,*
  780 F.2d 1448 (9th Cir. 1986) ........................................ 18
*Genrich v. City of Rice Lake,*
  2003 WI App 255, 268 Wis. 2d 233, 673 N.W.2d 361.................... 20, 21, 22
*Grayson v. O'Neill,*
  308 F.3d 808 (7th Cir. 2002) ............................................. 3
*Haynes v. City of Abilene,*
  659 S.W.2d 638 (Tex. 1983) ............................................ 17
*Hibben v. Smith,*
  191 U.S. 310 (1903) ..................................................... 14
*Hubbard v. City of Pierre,*
  2010 SD 55, 784 N.W.2d 499........................................... 17
*Johnson v. City of Eagan,*
  584 N.W.2d 770 (Minn. 1998) ........................................ 17
*Kadow v. Paul,*
  274 U.S. 175 (1927)..................................................... 13
*Kelly v. Pittsburgh,*
  104 U.S. 78 (1881) ...................................................... 15
*Knick v. Township of Scott, Pennsylvania,*
  139 S.Ct. 2162 (2019)..................................................... 8
*Koontz v. St. Johns River Water Management District,*
  570 U.S. 595, 133 S.Ct. 2586 (2013) .................................. 7
*Louisville and Nashville Railroad Co. v. Barber Asphalt Paving Co.,*
  197 U.S. 430 (1905)..................................................... 15
*McCormack v. Patchin,*
  53 Mo. 33 (1873)........................................................ 12
*New York Central Railroad Company v. Town of Glasgow,*
  95 S.E.2d 420 (W. Va. 1956)........................................... 17
*Philip Wagner, Inc. v. Leser,*
  239 U.S. 207 (1915)..................................................... 14
*Roberts v. Richland Irrigation District,*
  289 U.S. 71 (1933)...................................................... 15
*Spector Motor Serv. v. McLaughlin,*
  323 U.S. 101 (1944)...................................................... 5
*St. Augustine School v. Underly,*
  78 F.4th 349 (7th Cir. 2023).................................... 3, 4, 5, 6
*Steinbach v. Green Lake Sanitary District,*
  2006 WI 63, 291 Wis. 2d 11, 715 N.W.2d 195 ..................... 18, 19, 20
*Thibodeaux v. Comeaux,*
  243 La. 468, 145 So.2d 1 (1962) ...................................... 17

iii

*Tonawanda v. Lyon,*
  181 U.S. 389 (1901) ................................................................. 13

*Tower Business Park Associates Number One Limited Partnership v. Water*
  *Pollution Control Authority,*
  213 Conn. 112 (1989) ............................................................... 17

*Tyler v. Hennepin County, Minnesota,*
  598 U.S. 631, 143 S.Ct. 1369 (2023) ...................................... 9

*U.S. v. Holm,*
  326 F.3d 872 (7th Cir. 2003) ............................................. 1, 2

*Union Refrigerator Transit Company v. Kentucky,*
  199 U.S. 194 (1905) ................................................................. 15

*Village of Norwood v. Baker,*
  172 U.S. 269 (1898) ....................................................... passim

*Webster v. Fargo,*
  181 U.S. 394 (1901) ................................................................. 13

*Williamson County Reg'l Planning Comm'n v. Hamilton Bank,*
  473 U.S. 172 (1985) .................................................................. 8

*Wm. H. Heinemann Creameries v. Village of Kewaskum,*
  275 Wis. 636, 82 N.W.2d 902 (1957) ................................... 16

*Woods v. City of Chicago,*
  234 F.3d 979 (7th Cir. 2000) .................................................. 2

**Other Authorities**

F.R.A.P. 28(e) ............................................................................... 1
F.R.E. 801(2) ................................................................................ 2
F.R.E. 803(6) ................................................................................ 2
F.R.E. 803(8) ................................................................................ 2

**Argument**

**I.  The proposed facts in the Plaintiffs-Appellants' Statement of the Case were supported by admissible evidence in the record.**

The Defendants-Appellees complain that the Plaintiffs-Appellants' Brief cited to proposed findings of fact rather than the underlying record evidence. Brief of Defendants-Appellees 3. However, F.R.A.P. 28(e) does not say that a record citation cannot be to a proposed fact in the record rather than the underlying evidence also in the record. Each of the Plaintiffs-Appellants' Proposed Material Facts in Document #32 were supported by depositions, affidavits, the expert reports, and documentary evidence in the record. For example, PMF #22, *"The Marley Street Reconstruction Project included widening the road surface, adding bike lanes, adding a median, adding turn lanes, adding sidewalks, adding curb and gutter, and installing municipal water main, sewer main, and storm sewer,"* was supported by reference to exhibits to the Frank declaration in the record: Ex. B, the Project Update Handout, and Ex. F, the Village Board Meeting Staff Report. (ECF No. 32, PMF #22; ECF No. 28; ECF No. 28-3; ECF No. 28-7). The Plaintiffs-Appellants cited to the Proposed Material Facts in order to reference the record evidence in the most concise and understandable way for the Court.

The Defendants-Appellees next complain that some of the Plaintiffs-Appellants' proposed facts were unsupported by the cited evidence, relied on inadmissible evidence, or were incorrect. Brief of Defendants-Appellees 3. However, they do not develop any argument as to why. Undeveloped arguments unsupported by authority are waived. *U.S. v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (citations

1

omitted). The Defendants-Appellees seem to be arguing that the Court should determine the admissibility and support of the facts without the benefit of argument from the parties, but "'[i]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.'" *Id.* (quoting *Beard v. Whitley County REMC*, 840 F.2d 405, 408-09 (7th Cir. 1988)).

Any objections the Defendants-Appellees may have to the proposed facts are without merit. The Plaintiffs-Appellants' proposed facts were accurate and supported by admissible evidence in the record. For example, PMF # 22 was supported by the Village's own documents. (ECF No. 32, PMF #22). Before the District Court, the Defendants-Appellees disputed this fact for lacking foundation and authentication. (ECF No. 40, at 5).

The Defendants-Appellees do not have a serious argument that these documents are not admissible. They are apparently taking the position that documents such as their own Village Board staff reports have not been properly authenticated. This is clearly a case in which "[r]equiring authenticating affidavits in this case would be an empty formality...." *Woods v. City of Chicago*, 234 F.3d 979, 989 (7th Cir. 2000). The Ex. B Project Update Handout has the Village of Howard logo on the first page and could be authenticated through the Village, called as a witness, and admitted at trial as a statement of a party opponent, a public record, and a business record. F.R.E. 803(6), F.R.E. 803(8), F.R.E. 801(2). The Ex. F Village Board Meeting Staff Report similarly has the Village logo on the front page, and

would be authenticated and admitted in the same way. In addition, Mr. Frank would testify that these documents were part of the documents he reviewed and relied on as data in forming his expert opinions in this case, which is what his declaration explains. (ECF No. 28, Frank Decl. ¶¶8-17). The Declaration of Andrew Weininger, filed in this case as ECF No. 48, further confirms the admissibility and authentication of other documents which supported the proposed material facts.

## II.     The doctrine of constitutional avoidance does not apply.

The Defendants-Appellees ask this court to decline to address Plaintiffs-Appellants' constitutional claims under the doctrine of constitutional avoidance *after* the district court ruled on the constitutional claims in their favor. Brief of Defendants-Appellees 16. The Defendants-Appellees never raised the principle of constitutional avoidance before the district court. "It is well-established that a party waives the right to argue an issue on appeal if he fails to raise that issue before the trial court." *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) (citations omitted). Now, it is too late to invoke this doctrine because the district court already failed to avoid the constitutional claims.

The U.S. Supreme Court prefers "constitutional avoidance, if a difficult question can be resolved either by reliance on state law or on statutory grounds." *St. Augustine School v. Underly*, 78 F.4th 349, 358 (7th Cir. 2023) (internal citations omitted). Here, the district court already decided the constitutional issues so the issue simply can no longer be avoided.

To the extent that the state law claims could resolve the case without the need to address the constitutional claims, the Defendant-Appellees needed to raise this issue before they removed the case from state court to federal court and certainly before they asked the district court to grant summary judgment on the constitutional issues. (ECF No. 1; ECF No. 24). Far from invoking constitutional avoidance before the district court, the Defendants-Appellees actually moved for summary judgment on the constitutional claims and briefed these issues on the merits. (ECF No. 24, Defs.' Br. 8-14). The Defendants-Appellees received a favorable ruling on the constitutional claims from the district court and following that victory, now seek to insulate the district court's decision from review by hiding behind the doctrine of constitutional avoidance. The district court has ruled on the constitutional issues and Plaintiffs-Appellants are entitled to have this Court review that decision.

In advancing its constitutional avoidance doctrine argument, the Defendants-Appellees rely on a highly unusual situation where the plaintiff-appellant sought to receive a ruling on the constitutional issues *after* prevailing on state-law grounds. *St. Augustine*, 78 F.4th at 356. The district court did not rule on the constitutional issues. *Id.* The plaintiffs appealed. *Id.* at 357. In rejecting the plaintiffs' argument that the district court should have addressed its constitutional claims in spite of the fact they had already prevailed on a dispositive state law claim, the Seventh Circuit first recognized "the U.S. Supreme Court's preference for constitutional avoidance, if a difficult question can be resolved either by reliance on state law or on statutory grounds" and observed that courts must consider other grounds for decision before

reaching constitutional questions. *Id.* at 358 (internal citations omitted). "'Constitutional adjudication' must be 'unavoidable.'" *Id.* (citing *Spector Motor Serv. v. McLaughlin,* 323 U.S. 101, 105 (1944)).

Here, Plaintiffs-Appellants are in no way demanding that the court's decision be based on one theory versus another. In fact, Plaintiffs-Appellants filed this case in state court in the first place, advancing state and federal claims, and it was the Defendants-Appellees who removed this case to federal district court. (ECF No. 1). While Plaintiffs-Appellants very likely will prevail on state law grounds, no court has dispositively ruled on the state law claims and the Plaintiffs-Appellants are not pressing the Court to rule on its constitutional claims regardless of a dispositive state law ruling, as occurred in *St. Augustine*. Plaintiffs-Appellants have zealously pursued all of their claims in this case, beginning with filing the original lawsuit in state court, which included the federal claims, which was allowed (and necessary) because Plaintiffs-Appellants would likely be barred from bringing such claims in the future if they were not included in the original lawsuit.

After the Defendants-Appellees moved the lawsuit to federal district court, the court had jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. The parties filed cross motions for summary judgment on *all* of Plaintiffs-Appellants' claims and the district court ruled on Plaintiffs-Appellants' federal claims and remanded the state claims to state court. At no point did the Defendants-Appellees or the district court seek to avoid the constitutional issues.

Here, the state law claims were remanded to state court to the Brown County Circuit Court. (ECF No. 59). State law claims "can be and often are revived in federal court" when the federal basis of the suit is reinstated on appeal. *St. Augustine*, 78 F.4th at 358. Regardless of whether the state law claims are decided by the state court or revived in federal court following this appeal, the Defendants-Appellees never raised constitutional avoidance earlier in the proceedings. Defendants-Appellees now argue that Wisconsin law provides a statutory framework and remedies for the claims. Brief of Defendants-Appellees 17. But instead of leaving the case in state court and asking the state court to decide the matter based on state law without reaching the constitutional claims, the Defendants-Appellees removed the case to federal court and now, more than two years since the state court action was filed, the only claims that have been adjudicated are the constitutional claims, which the Defendants-Appellees asked the district court to address.

Lastly, even if Plaintiffs-Appellants ultimately prevail on their state law claims, it does not necessarily follow that the constitutional claims could be avoided. For example, the court could find that the special assessments violated Wisconsin law and invalidate or reduce the amount of the special assessment. Plaintiffs-Appellants would still also have claims against the Village for violating their constitutional rights. *Village of Norwood v. Baker*, 172 U.S. 269, 279 (1898); *Carolina & N.W. Ry. Co. v. Town of Clover*, 46 F.2d 395, 399 (4th Cir. 1931). As set forth more extensively below and in Plaintiff-Appellants' brief-in-chief, the constitutional claims are

unavoidable regardless of the Plaintiffs-Appellants prevailing on the state law claims.

III.   **The Plaintiffs-Appellants established that the special assessments were excessive and therefore an unconstitutional taking.**

The answer to even the Defendants-Appellees' preferred wording of the issue, "Can a special assessment give rise to a Fifth Amendment takings claim?" (Brief of Defendants-Appellees 2), is yes, if the assessment is in substantial excess of the benefits received. This principle was set forth in the *Norwood* case, has never been overturned, and has recently been affirmed by many state and lower courts, including the Wisconsin Supreme Court on two occasions.

A.   **The general tax cases cited by the Defendants-Appellees do not override the specific *Norwood* principle that a special assessment in substantial excess of the special benefits is an unconstitutional taking.**

The Defendants-Appellees begin their argument by referencing general tax cases (not special assessment cases) for the proposition that "taxes are not takings." Brief of Defendants-Appellees 19. However, the Plaintiffs-Appellants are not claiming that a lawfully executed special assessment tax would be a taking. *Koontz*, *Commonwealth Edison*, and *Edmonson* were not special assessment cases and therefore do not shed light on the specific circumstance of when special assessments cross the line and become unlawful takings. *Koontz* involved the question of whether development permits could be conditioned on deeding a conservation easement or the paying mitigation fees. *Koontz v. St. Johns River Water Management District*, 570 U.S. 595, 133 S.Ct. 2586, 2952-53 (2013). The *Commonwealth Edison* case involved

assessments on utility companies for contamination remediation, and therefore did not have anything to do with municipal special assessments. *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1329 (Fed. Cir. 2001). In addition, the lower court in *Commonwealth Edison* had decided that the assessments on the utilities were *not* excessive. *Id.* at 1337. The *Edmonson* case involved an inmate whose inmate trust account was frozen to allow payment of filing fees. *Edmonson v. Fremgen*, 17 F. Supp. 3d 833, 834 (E.D. Wis. 2014). The court observed that, "the payment of legitimate fees or levies" is not unconstitutional. *Id.* at 835. Here, the Plaintiffs-Appellants are not complaining about a *legitimate* fee or levy. Instead, the Plaintiffs-Appellants are challenging a special assessment that became *illegitimate* when it went too far because the amount was in substantial excess of the minimal or nonexistent special benefits.

The *Creason* case actually was a special assessment case, but the Eighth Circuit declined to analyze whether or not a special assessment could be a taking. *Creason v. City of Washington*, 435 F.3d 820, 825 (8th Cir. 2006). Instead, the court upheld the dismissal of the takings claim based on *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 n. 13 (1985). This is important because *Williamson County* was overruled in 2019 by *Knick v. Township of Scott, Pennsylvania*, and following that case, now a landowner has a viable constitutional claim when the taking occurs and is no longer required to fulfill the *Williamson County* exhaustion requirement. *Knick v. Township of Scott, Pennsylvania*, 139 S.Ct. 2162, 2167 (2019). Because of this, the *Creason* case does not shed light on the issue

at bar, although it does acknowledge the *Norwood* precedent. *Creason*, 435 F.3d at 825. It also bears noting that nothing in *Creason* indicated that the plaintiffs had pled facts to show that the assessment was in "substantial excess" of the benefits received.

The recent *Tyler* case cited by the Defendants-Appellees was also not a special assessment case, but it does provide some relevant insight. In *Tyler*, plaintiff Geraldine Tyler owed $15,000 in unpaid real estate taxes on her condo, the County seized her condo, sold it for $40,000, and kept the $25,000 excess. *Tyler v. Hennepin County, Minnesota*, 598 U.S. 631, 143 S.Ct. 1369, 1373 (2023). *Tyler* noted that "a government may not take more from a taxpayer than she owes" and that "[o]ur precedents have also recognized the principle that a taxpayer is entitled to the surplus in excess of the debt owed." *Id.* at 1376, 1378. The court held that the County's retention of the excess proceeds from the sale, above and beyond the tax debt, was a taking under the Takings Clause that entitled Tyler to compensation. *Id.* at 1376. The court explained, "[t]he Takings Clause 'was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Id.* at 1381 (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

Although *Tyler* was not a special assessment case, it echoes the principles underlying the *Norwood* decision. Geraldine Tyler alone could not be forced to bear public burdens that should be borne by the public as a whole, and therefore the County could not effectively charge her $40,000 to cover a $15,000 tax debt, because this was far in excess of the debt owed. Similarly, the residents in special assessment

cases are also not supposed to bear public burdens that should be borne by the public as a whole. A handful of homeowners should not be paying exorbitant sums for a road project designed to benefit the entire traveling public. Similar to the constitutional protections articulated in *Tyler*, *Norwood* guarantees that a property owner will not be forced to bear a special assessment that is in substantial excess of the special benefits unique to the property.

**B.** ***Norwood* is the applicable and controlling law here and the "subsequent Supreme Court cases" cited by the Defendants-Appellees do not hold otherwise.**

The cases subsequent to *Norwood* cited by the Defendants-Appellees did not overrule *Norwood*, which never stood for the proposition that governments could not levy special assessments in some, or indeed many, circumstances. *Norwood* held that a special assessment in substantial excess of the special benefits received was a taking. *Norwood*, 172 U.S. at 279. The Defendants-Appellees characterize this as "extremely narrow implications" but the holding simply is what it is. *See* Brief of Defendants-Appellees 14. If municipalities rarely assess their residents amounts substantially in excess of the special benefits, then *Norwood* would rarely apply. If, however, as in the case at bar, a municipality charges its residents tens of thousands of dollars for a project that the residents prove had no or negligible benefit to them, so that the assessment was in substantial excess of the benefits, then the residents would state a claim under *Norwood* and the assessment would be an unconstitutional taking.

On the other hand, it is clear that the assessment does not have to be exactly equal to the benefit. *Norwood*, 172 U.S. at 279 ("We say 'substantial excess' because exact equality of taxation is not always attainable..."). Therefore, in the "subsequent" cases, if the plaintiffs failed to plead or establish that the assessment amount was in *substantial excess* of the benefits, then it is not surprising that their claims failed and *Norwood* was of no help to them.

But here, the Plaintiffs-Appellants *did* allege (and proved via expert declarations and testimony) that the special assessments *were* arbitrary and egregious because they were in substantial excess of the nonexistent special benefits. It is in the very definition of a special assessment that it may only be levied against properties that receive special benefits. *Norwood*, 172 U.S. at 278. And where the assessments are in substantial excess of the benefits (in part because there are no benefits) the assessment is an unconstitutional taking under *Norwood*.

Before examining these "subsequent" cases, it is necessary to recount the relevant facts of *Norwood*. The Village of Norwood assessed a landowner for the cost of opening a street abutting her property under a state statute that authorized "a special assessment upon the bounding and abutting property *by the front foot* for the entire cost and expense of the improvement, without taking special benefits into account." *Norwood*, 176 U.S. at 290 (emphasis added). The court held that actually, assessments could *not* be made by the front foot of the abutting property without taking into account whether that property received special benefits, because, "such assessment must be measured or limited by the special benefits accruing to it; that

is, by benefits that are not shared by the general public; and that taxation of the abutting property for any substantial excess over special benefits will, to the extent of such excess, be a taking of private property for public use without compensation." *Id.* at 294.

The Defendants-Appellees claim that the *French* line of cases superseded *Norwood*, but this is not true. *French* did not overrule *Norwood*, but instead clarified that *Norwood* was not a sweeping indictment of all front foot special assessments, rather, the *Norwood* prohibition on substantially excessive assessments could be described as prohibiting assessments that were arbitrary and confiscatory. *French v. Barber Asphalt Paving Company*, 181 U.S. 324, 327, 344 (1901). *Norwood* itself had cited authority that described how a special assessment could be "an act of confiscation." *Norwood*, 176 U.S. at 282 (quoting *McCormack v. Patchin*, 53 Mo. 33, 36 (1873)).

In order to see that *French* certainly did not overrule *Norwood*, one only has to look back at how contemporary court decisions dealt with the two cases. A 1929 Fifth Circuit case explained:

> On the merits of the case there is little need for discussion. Assessments for street paving according to the front foot rule have generally been upheld, because usually the cost does not exceed the benefit, and it is practically impossible to secure absolute equality in the distribution of the cost, or to prevent particular cases of hardship. French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 S. Ct. 625, 45 L. Ed. 879; Louisville & N. R. R. Co. v. Barber Asphalt Paving Co., 197 U. S. 430, 25 S. Ct. 466, 49 L. Ed. 819; Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55, 36 S. Ct. 254, 60 L. Ed. 523. But, where a particular assessment is confiscatory, or is out of all proportion to the benefit received by an abutting property owner, it violates due process clause of the Fourteenth Amendment, and is not saved by adherence to the front foot rule. City of Atlanta v. Hamlein, 96 Ga. 381, 23 S. E. 408; Village of Norwood v. Baker, 172 U. S. 269, 19 S. Ct. 187, 43 L. Ed. 443.

*City of Commerce v. Southern Ry. Co.*, 35 F.2d 331, 333 (5th Cir. 1929). The court ultimately held that the assessed property was "not appreciably benefited" and upheld a preliminary injunction against the assessment. *Id.* at 332-33. The 1927 *Kadow* case also affirmed the *Norwood* principle by explaining that an assessment would not violate the landowner's constitutional rights "as long as their benefits continue respectively to exceed their individual assessments." *Kadow v. Paul*, 274 U.S. 175, 181 (1927).

Following *Norwood*, apparently large numbers of landowners thought that *Norwood* meant that municipalities could no longer use the front foot method to assess properties *at all. See, i.e., Webster v. Fargo*, 181 U.S. 394, 395 (1901) (plaintiff's sole contention was that "all special assessments upon the basis of frontage are in violation of the Fourteenth Amendment"). *Norwood* was decided in 1898, and in 1901 there were multiple cases challenging front foot assessments, including *Webster*, *Cass Farm Company*, *Parker*, *Tonawanda*, and *French*. In all of these cases, the Supreme Court clarified that *Norwood* did *not* impose a blanket ban on all front foot assessments, but held that an assessment that was "an abuse of the law, an act of confiscation, and not a valid exercise of the taxing power" would not be upheld as constitutional. *French v. Barber Asphalt Paving Company*, 181 U.S. 324, 327, 344 (1901). *See also Tonawanda v. Lyon*, 181 U.S. 389, 391-92 (1901); *Detroit v. Parker*, 181 U.S. 399, 399-401 (1901); *Cass Farm Company v. Detroit*, 181 U.S. 396, 396-98 (1901). Circling back to *Norwood*, that case instructs that an abuse of law and confiscation of property occurs when there is an "exaction from the owner of private

property of the cost of a public improvement in substantial excess of the special benefits accruing to him" because that assessment is "*to the extent of such excess*, a taking, under the guise of taxation, of private property for public use without compensation." *Norwood*, 176 U.S. at 279 (emphasis in original).

In contrast with *Norwood*, in the 1901 cases the landowners did not plead or establish that this substantial excess problem had occurred. *See, i.e., Detroit v. Parker*, 181 U.S. at 400 ("Nor was it alleged that the portion or share of the cost of making the improvements assessed against complainant's property in point of fact exceeded the benefits accruing to each property by reason of such paving."). Later cases also lacked the *Norwood* substantial excess problem. *See, i.e., Philip Wagner, Inc. v. Leser*, 239 U.S. 207, 220 (1915) ("in the present case there is neither allegation nor proof of such disproportion between the assessment made and the benefit conferred as to suggest that the small tax levied upon this property would amount to an arbitrary exercise of the legislative power upon the subject.").

*French* expressly acknowledged that the courthouse is open to landowners with an actual Fourteenth Amendment claim: "[i]t may be conceded that courts of equity are always open to afford a remedy where there is an attempt, under the guise of legal proceedings, to deprive a person of his life, liberty or property, without due process of law." *French*, 181 U.S. at 345. Later cases reiterated the flip side of this proposition: "the Federal courts should not interfere *unless* there is some abuse of law amounting to confiscation of property or a deprivation of personal rights." *Hibben v. Smith*, 191 U.S. 310, 326 (1903) (emphasis added).

Finally, the *Roberts v. Richland Irrigation District* case's language about receiving "no actual benefits" is distinguishable because it was not a special assessment case analogous to the case at bar, rather it involved an entire irrigation district and a general tax (not a special assessment) levied to pay off municipal bonds. *Roberts v. Richland Irrigation District*, 289 U.S. 71, 72, 75 (1933). Similarly, the language in the *Union Refrigerator Transit Company v. Kentucky* case regarding "extremely doubtful" benefits is distinguishable because it was based in part on case law about general property taxes, and in part on a case that limited its holding to "grading, curbing and paving" and held that the benefits did not have to be limited only to the present use. *Union Refrigerator Transit Company v. Kentucky*, 199 U.S. 194, 203 (1905) (citing, i.e., *Kelly v. Pittsburgh*, 104 U.S. 78 (1881); *Louisville and Nashville Railroad Co. v. Barber Asphalt Paving Co.,* 197 U.S. 430, 432-35 (1905)).

C.    ***Norwood* is the accepted and widely cited law across jurisdictions today.**

Despite the protests of the Defendants-Appellees with their references to early 20th century cases, it is clear that the principle stated in *Norwood* is an accepted principle of law today across many states and courts, including Wisconsin. A review of case law across jurisdictions makes it clear that courts do not consider *Norwood* to have "extremely limited application," as alleged by the Defendants-Appellees. Brief of Defendants-Appellees 22.

In *Carolina & N.W. Ry. Co. v. Town of Clover*, the Fourth Circuit referenced *Norwood* and held that the assessment violated the Fourteenth Amendment because

an assessment that was confiscatory or "'out of all proportion to the benefit received'" violates due process. *Carolina & N.W. Ry. Co. v. Town of Clover*, 46 F.2d 395, 399 (4th Cir. 1931) (quoting *City of Commerce v. Southern Ry. Co.*, 35 F.2d 331, 333 (5th Cir. 1929)). The Fourth Circuit acknowledged *French* by observing that ordinarily a front foot assessment may be permissible because "[i]n such a case it is *not likely that the cost will exceed the benefit....*" *Id.* at 398 (citing *French*, *Cass Farm Co.*) (emphasis added). The court held that the street project was of no benefit to the plaintiff and therefore the assessment violated the due process and equal protection clauses of the Fourteenth Amendment. *Id.* at 399.

In *City of Commerce v. Southern Ry. Co.*, the Fifth Circuit cited to *Norwood* for the proposition that, "where a particular assessment is confiscatory, or is out of all proportion to the benefit received by an abutting property owner, it violates due process clause of the Fourteenth Amendment," held that the assessed property was "not appreciably benefited," and upheld a preliminary injunction against the assessment. *City of Commerce v. Southern Ry. Co.*, 35 F.2d 331, 332-33 (5th Cir. 1929).

In 2018, the Wisconsin Supreme Court explained that, "[a] special assessment in substantial excess of special benefits accruing to the property is an unlawful taking without compensation." *CED Properties, LLC v. City of Oshkosh*, 2018 WI 24, ¶42, 380 Wis. 2d 399, 909 N.W.2d 136 (citing *Wm. H. Heinemann Creameries v. Village of Kewaskum*, 275 Wis. 636, 640, 82 N.W.2d 902 (1957)).

In 2010, the South Dakota Supreme Court affirmed *Norwood* by holding, "if a city's action violates constitutional principles, the action is by its very nature arbitrary, unreasonable, and beyond its authority. The constitutionality of a city's act in specially assessing property requires the assessment 'be measured or limited by the special benefits accruing to [the property].'" *Hubbard v. City of Pierre*, 2010 SD 55, ¶ 10, 784 N.W.2d 499 (quoting *Norwood*, 172 U.S. at 294). The court upheld the circuit court's finding that the special assessment violated the Fifth Amendment. *Id.* ¶ 1. In 1970, the Supreme Court of Nevada affirmed the holding of *Norwood* and upheld the circuit court's finding that there were no benefits and the assessments were void. *City of Reno v. Folsom*, 464 P.2d 454, 456-57 (Nev. 1970).

The Texas, New Jersey, Kansas, Louisiana, West Virginia, Minnesota, and Connecticut Supreme Courts have also all affirmed the holding of *Norwood*, often noting that the holding is "well settled" or "well established." *Haynes v. City of Abilene*, 659 S.W.2d 638, 641 (Tex. 1983); *2nd Roc-Jersey Associates v. Town of Morristown*, 158 N.J. 581, 731 A.2d 1, 11 (1999); *Allison v. Board of County Commissioners of Johnson County, Kansas*, 241 Kan. 266, 275, 737 P.2d 6 (1987); *Thibodeaux v. Comeaux*, 243 La. 468, 145 So.2d 1, 9 (1962); *New York Central Railroad Company v. Town of Glasgow*, 95 S.E.2d 420, 425 (W. Va. 1956); *Johnson v. City of Eagan*, 584 N.W.2d 770, 772 n.4 (Minn. 1998); *Tower Business Park Associates Number One Limited Partnership v. Water Pollution Control Authority*, 213 Conn. 112, 122 (1989).

Both the Fifth Circuit and the Ninth Circuit issued decisions in the 1990s that wondered, in a footnote, how *Norwood* was impacted by *French*. *Federal Deposit Ins. Corp. v. City of New Iberia*, 921 F.2d 610, 614 n.5 (5th Cir. 1991); *Furey v. City of Sacramento*, 780 F.2d 1448, 1954 n.5 (9th Cir. 1986). The courts did not develop an analysis on this issue and the Ninth Circuit concluded that it should assume without deciding that *Norwood* continues to be good law. *Id.* The Eighth Circuit also wondered if the law in this area is "unclear" and declined to answer the question of whether the special assessment in that case was a taking. *Creason v. City of Washington*, 435 F.3d 820, 825 (8th Cir. 2006).

Plaintiffs-Appellant's position is that the law actually is clear that *Norwood* is good law, as evidenced by the authority in this brief, and that the *Carolina & N.W. Ry. Co. v. Town of Clover* and *City of Commerce v. Southern Ry. Co.* cases offer an accurate explanation of how courts should analyze the law. *Carolina & N.W. Ry. Co. v. Town of Clover*, 46 F.2d 395, 399 (4th Cir. 1931); *City of Commerce v. Southern Ry. Co.*, 35 F.2d 331, 332-33 (5th Cir. 1929).

### D.   The assessments in this case were unlawful and unreasonable.

Plaintiffs-Appellants do not dispute that the assessment need not be strictly limited to the exact value of the benefits. *Steinbach v. Green Lake Sanitary District*, 2006 WI 63, ¶13, 291 Wis. 2d 11, 715 N.W.2d 195; *Norwood*, 172 U.S. at 279. However, the assessments in this case were not reasonable because the Plaintiffs-Appellants established that they were in fact in substantial excess of the nonexistent

benefits. In fact, the Plaintiffs-Appellants established that there were no special benefits at all because the project was not a "local improvement."

The Defendants-Appellees' argument about meeting a common-law "two-prong test" is legally incorrect and not supported by the case law. Brief of Defendants-Appellees 28. There is no "two-prong test," rather, a special assessment in Wisconsin, regardless of what statute or ordinance it is levied under, and even if levied under the police power, must be constitutional and must meet the three requirements set forth in *CED Properties:* "(1) the improvement must be local rather than general; (2) the improvement must confer special benefits on the property; and (3) the assessment must be fair and equitable and in proportion to the benefits accruing." *CED Properties*, 2018 WI 24, ¶35. Even under the Defendants-Appellees' questionable argument that the special assessments here were levied under local ordinance authorized by Wis. Stat. § 66.0701, they still have to follow the "local project" requirement, and therefore also the "special benefits" requirement, as well as the reasonable method of assessment requirement.

The Defendants-Appellees cite to *Steinbach* its argument. Brief of Defendants-Appellees 28 (citing *Steinbach*, 2006 WI 63, ¶13). The *Steinbach* case says nothing in Paragraph 13 that even remotely resembles this proposition and instead actually completely negates the idea that there would be a "common law" test for special assessments because it explicitly notes that the power to levy special assessments is statutory. *Id.*

*Steinbach* cites to an older Wisconsin case that was interpreting Wis. Stat. § 66.60, the predecessor to Wis. Stat. § 66.0703. *Steinbach*, 2006 WI 63, ¶15 (citing *Berkvam v. City of Glendale*, 79 Wis. 2d 279, 287, 255 N.W.2d 521 (1977)). This appears to be where the Defendants-Appellees got the "two-prong" idea. However, this was not a "common law" test, it was part of Wis. Stat. § 66.60, which was the special assessment predecessor statute to Wis. Stat. § 66.0703. *Steinbach* did not address Wis. Stat. § 66.0701 at all, rather, the special assessments in that case were levied under Wis. Stat. § 66.0703. *Steinbach*, 2006 WI 63, ¶12. The Defendants-Appellees' reference to a "two-prong common law test" that would apply to Wis. Stat. § 66.0701 has absolutely no basis in the *Steinbach* case and no support from any other source of Wisconsin law.

A special assessment levied under a local ordinance authorized by Wis. Stat. § 66.0701 is still a "special assessment." And Wisconsin law is clear that a special assessment may only be levied for a local improvement, because this is the very definition of a special assessment. *Genrich v. City of Rice Lake*, 2003 WI App 255, ¶9, 268 Wis. 2d 233, 673 N.W.2d 361. This requirement of a local improvement is not based on the text of Wis. Stat. § 66.0703, rather, it is inherent in the very definition of a special assessment. *Norwood* long ago explained the basic principle of "special assessments for local improvements." *Norwood*, 172 U.S. at 287. "'Special benefits to the property assessed, that is, benefits received by it in addition to those received by the community at large, is the true and only just foundation upon which local assessments can rest; and *to the extent of special benefits* it is everywhere admitted

that the legislature may authorize local taxes or assessments to be made.'" *Id.* (citing Dillon's Treatise on Municipal Corporations) (emphasis in original).

The "local improvement" requirement gives rise to the "special benefit" requirement because conferring a special benefit is part of the definition of a local improvement. *Genrich*, 2003 WI App 255, ¶8. Therefore, in any special assessment case, including one brought under a local ordinance pursuant to the authority given by Wis. Stat. § 66.0701, it is required that benefits be "special benefits."

Here, as set forth in the Plaintiffs-Appellants' brief in chief, the Plaintiffs-Appellants established that their properties were not specially benefitted and the improvement was not local. The Plaintiffs-Appellants submitted proposed facts supported by expert reports, deposition testimony, and Village documents that established that their properties were not benefitted at all by the project, but rather were harmed. (ECF No. 28; ECF No. 29; ECF No. 32). The Defendants-Appellees are still claiming that just identifying the infrastructure that they built is enough to establish a benefit. Brief of Defendants-Appellees 30. The Defendants-Appellees baldly conclude in a single sentence, without actually establishing a factual basis, that the project was "for local benefit and conferred special benefits." Brief of Defendants-Appellees 13. In contrast, the Plaintiffs-Appellants set forth sufficient facts to establish that the various components of the project (the sanitary sewer and water main, the storm sewer, the sidewalk, the roadway) did not benefit them, were not "special" benefits, and that the project was not local. *See* Brief of Plaintiffs-Appellants 16-36. Even the Defendants-Appellees' admission that the project

included "larger than standard size improvements (also known as 'oversizing')," Brief of Defendants-Appellees 9, is an admission that the project was not local, because oversize infrastructure designed to serve a large area is not "primarily made for the accommodation and convenience of inhabitants in a particular locality," i.e., the residents of Marley Street. *Genrich*, 2003 WI App 255, ¶ 8.

Furthermore, the Plaintiffs-Appellants established that the assessments were not reasonable because they were could not be proportional to the minimal or nonexistent benefits received, and because the assessments were not apportioned between all benefitted persons (which included a large number of members of the general community as well as specific property owners who were not assessed). *See* Brief of Plaintiffs-Appellants 47-50. The Defendants-Appellees' conclusory arguments that the assessments were reasonable is based on the erroneous premise that only the abutting owners benefited from the project, which even the Village admitted was not the case. (ECF No. 32, PMF # 123-126).

## IV. The Plaintiffs-Appellants' procedural due process rights were violated.

The Plaintiffs-Appellants' procedural due process rights were violated because the Defendants-Appellees failed to provide proper notice as to what statute or ordinance it was proceeding under. *Estate of Wolff v. Town Bd. of Town of Weston,* 156 Wis. 2d 588, 592, 457 N.W.2d 510 (Ct. App. 1990).

In a footnote, the Defendants-Appellees claim that they did follow the appropriate procedure and point to the preliminary resolution and the final

resolution. Brief of Defendants-Appellees 34. However, neither resolution referenced *any* Village ordinance. (ECF No. 27-5; ECF No. 27-11). The Defendants-Appellees' failure to provide proper notice of what statute or ordinance they were proceeding under potentially jeopardizes the Plaintiffs-Appellants' ability to access to the remedies provided for under Wis. Stat. § 66.0703(12)(d). As set forth extensively in Plaintiffs-Appellants' brief-in-chief, the state appeal was timely, but the Defendants-Appellees are arguing otherwise. Brief of Plaintiffs-Appellants 41-43. The Plaintiffs-Appellants' argument on this issue was *not* made for the first time on appeal. (*See* ECF No. 42, Pls.' Br. 7-11.)

## V. The Plaintiffs-Appellants' substantive due process rights were violated.

The Defendants-Appellees argue that their conduct "is not the sort of conduct which gives rise to a substantive due process claim because it does not shock the conscience." Brief of Defendants-Appellees 37. However, the Plaintiffs-Appellants were forced to pay expensive assessments totalling tens of thousands of dollars for a project that has no benefit to them. Beyond that, it certainly "shocks the conscience" that while the Plaintiffs-Appellants received no benefit, the Defendants-Appellees readily admit that their own property was greatly benefited. In the Defendants-Appellees' own words, the Project made half of its 80-acre property "eminently desirable for private development." (ECF No. 32, PMF # 47-50).

The Defendants-Appellees cannot simply confiscate residents' money because they happen to live near a road project that the Village implemented to benefit area

wide development including its own land. Because there was no benefit to the Plaintiffs-Appellants' properties, they have an actionable due process claim. In *Carolina & N.W. Ry. Co. v. Town of Clover*, the Fourth Circuit held that the street project was of no benefit to the plaintiff and therefore the assessment violated the due process clause of the Fourteenth Amendment. *Carolina & N.W. Ry. Co. v. Town of Clover*, 46 F.2d 395, 399 (4th Cir. 1931).

## VI.     The Plaintiffs-Appellants' equal protection rights were violated.

Also in *Carolina & N.W. Ry. Co.*, the Fourth Circuit held that the assessment for a street project of no benefit to the plaintiff violated the equal protection clause of the Fourteenth Amendment. *Id.* at 399. Here, the Plaintiffs-Appellants established that the project was of no benefit to them. The Defendants-Appellees make the bold claim that the comparators identified by Plaintiffs-Appellants were borderline frivolous. Brief of Defendants-Appellees 39. However, the Defendants-Appellees fail to actually address the specific comparators identified in the brief and before the district court. The relevant and material criteria for the comparators is whether they use the new project infrastructure. Contrary to Defendants-Appellees' argument, Plaintiffs-Appellants did set forth evidence of specific proposed comparators, one example was a nearby concrete plant, as well as the general public using the road. (ECF No. 32, PMF # 47-50, 51-54, 56-57, 60-63, 78-79, 87-90, 101, 109-111, 123-126). Here, Plaintiffs-Appellants have thoroughly explained that they were treated less favorably than those who similarly use the road, including specific nearby

properties such as the concrete plant, but who were not assessed tens of thousands of dollars.

The Defendants-Appellees next argue that "there is a patently obvious rational basis for the treatment in this case." Brief of Defendants-Appellees 40. However, they only make a general conclusory statement about the mathematical equations used to assess the properties. *Id.* This ignores the Plaintiffs-Appellants' claim that being included in the assessment in the first place due to adjacency to the Project was arbitrary and had no relation to the alleged benefits of use of the infrastructure. The concrete plant, manufacturing facility, and Howard's certified industrial site, not to mention the traveling public, all make more use of the Project than the Plaintiffs-Appellants' properties do. (ECF No. 32, PMF # 47-50, 51-54, 56-57, 60-63, 78-79, 87-90, 101, 109-111, 123-126).

## Conclusion

For the above reasons, and as stated in the Brief of Plaintiffs-Appellants, Plaintiffs-Appellants respectfully request that the Court reverse the order of the district court and remand the case for further proceedings.


Dated January 31, 2025.

EMINENT DOMAIN SERVICES, LLC

*/s/ Andrew D. Weininger*
Andrew D. Weininger
SBN 1084096
andrew@eminentdomainservices.com
Eminent Domain Services, LLC
6515 Grand Teton Plaza, Ste 241
Madison, WI 53719
(608) 535-6109

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)

This document complies with the type limitations provided in the Federal Rule of Appellate Procedure 32(a)(7), supplemented by Circuit Rule 32(c) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,621 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-styles requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 12 pt. Century Schoolbook font.

Dated January 31, 2025.

*/s/ Andrew D. Weininger*
EMINENT DOMAIN SERVICES, LLC
Attorneys for Plaintiffs-Appellants
Andrew D. Weininger
State Bar Number: 1084096

andrew@eminentdomainservices.com
Eminent Domain Services, LLC
6515 Grand Teton Plaza, Ste 241
Madison, WI 53719
(608) 535-6109

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31st of 2025, I electronically filed the foregoing Plaintiffs-Appellants' Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated January 31, 2025.

*/s/ Andrew D. Weininger*
EMINENT DOMAIN SERVICES, LLC
Attorneys for Plaintiffs-Appellants
Andrew D. Weininger
State Bar Number: 1084096

andrew@eminentdomainservices.com
Eminent Domain Services, LLC
6515 Grand Teton Plaza, Ste 241
Madison, WI 53719
(608) 535-6109